IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEAL P. ZINDA,

                        Plaintiff,

         v.

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

                                    OPINION AND ORDER

                                        19-cv-931-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Neal P. Zinda is seeking review of a final decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g).  The administrative law judge found that plaintiff had several severe mental and physical impairments, but that he could still perform work in the national economy despite his impairments.  Plaintiff contends that the administrative law judge erred in several ways.

As explained below, the administrative law judge failed to provide good reasons to support her decision to weigh the opinions of non-examining agency psychologists over those of plaintiff's treating and examining medical providers.  In addition, the administrative law judge failed to provide sufficient basis for her assessment of plaintiff's mental and physical limitations and plaintiff's subjective symptoms.  As a result, I conclude that the administrative law judge's assessment of plaintiff's residual functional capacity is not supported by substantial evidence.  This case will be remanded for further proceedings.

The following facts are drawn from the administrative record (AR).

## FACTS

### A.  Social Security Application and Background

Plaintiff Neal Zinda was born in 1970, making him 45 years old at the time he filed for disability insurance benefits and supplemental security income in May 2016.  Plaintiff is a former firefighter, and claims to have been disabled since August 2015 by post-traumatic stress disorder, bipolar disorder, anxiety and a bulging disk. AR 268. He later asserted that he was also disabled by right shoulder pain.  His application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge.  After the hearing, the administrative law judge issued a written decision concluding that plaintiff was not disabled.  AR 13-24.

In September 2019, the appeals council denied plaintiff's request for review, AR 1-3, making the administrative law judge's decision the final decision of the commissioner. Plaintiff then filed this lawsuit under 42 U.S.C. § 405(g).

### B.  Overview of Medical Problems and Treatment

#### 1.  Mental health

Plaintiff has a long history of mental health problems, and his treating providers have diagnosed bipolar disorder, post-traumatic stress disorder, depression with anxiety, attention deficit disorder and insomnia.  AR 429, 671.  He was given a diagnosis of bipolar disorder

2

in 2008, and had several psychiatric hospitalizations after that, although none after his alleged disability onset date in 2015.  AR 372, 376.  He has difficulty controlling his anger and aggressiveness toward others, and his anger has made it difficult for him to hold a job. AR 48, 315, 430. He was terminated from his assistant fire chief position a few months after receiving a bipolar diagnosis in 2008.  AR 376.  He takes several medications for his mental health problems, including Seroquel, Depakote, Prozac, Wellbutrin, Xanax and Adderall. AR 559.

For more than 15 years, plaintiff's primary medical provider has been Teresa Grimes, a physician assistant.   Grimes diagnosed bipolar disorder and anxiety, and manages plaintiff's psychiatric medications. AR 446-450, 552-554.   During appointments with Grimes in 2016, plaintiff sometimes reported feeling depressed, anxious and agitated, AR 446-448, 583, while at other times, he reported that he was able to manage his depression and anxiety.  AR 552.  In July 2016, plaintiff reported to Grimes that he had had a panic attack while attending his child's sporting event, and Grimes noted that plaintiff had a flat mood and affect and that his anxiety was apparent.  AR 553.  Grimes also noted that plaintiff had not been able to work full-time because he kept being fired from jobs.  Id.  In September 2016, plaintiff asked Grimes whether she could adjust his medications because they were causing hand weakness and tremors.  AR 552.

Plaintiff has received psychotherapy from several licensed professional counselors. He saw Lynn Flannery, MS, LPC-SA, NCC, from Jefferson County Human Services, on a weekly basis for psychotherapy from August 2014 to June 2016.  AR 472-547.  Flannery

3

worked with plaintiff on anger management and other coping skills.  Flannery's treatment notes report that plaintiff had several periods during which his mood and anxiety were stable and under control, AR 467, 475, 477-78, 484-91, 502, and other times during which he needed extra counseling about PTSD triggers and anxiety.  AR 495-499.  Between December 2015 and March 2016, plaintiff had an increase in his depressive and anxious symptoms and reported that he had had angry outbursts and was unable to work, check his mail, email or voicemail, or care of himself properly.  AR 503-09.  During this period, he sent angry and threatening emails to a supervisor and was put on administrative leave from his part-time job as a peer-support specialist. AR 511, 518.  He later resigned from the job because he was frustrated.  AR 513.  In April 2016, plaintiff reported feeling stable again.  AR 504-20, 24.

In June 2016, plaintiff was assigned to a different therapist, Krista Doerr, MS, LPC-SA, NCC.  AR 526.  Doerr met with plaintiff for a couple of sessions, and noted that he was depressed but stable. AR 593.  In September 2016, plaintiff starting seeing Jennifer Wendt, MA, LPC-SA, NCC for psychotherapy.  AR 600. Between September and November 2016, Wendt noted that plaintiff's moods were depressed, but stable.  AR 600-604.  In December 2016, plaintiff became very angry during a session with Wendt and stated that he wanted to throw a chair.  AR 607.

2. Shoulder pain

Plaintiff first sought treatment for right shoulder pain in May 2016.  AR 560.  An exam showed that his right shoulder had a normal range of motion and strength, but that

4

the shoulder caused him pain during examination, was tender, and that there was some crepitus with backward movements.  AR 563.  An x-ray showed no fracture or dislocation. AR 566.

Plaintiff sought treatment again for shoulder pain in January 2017.  AR 638.  Upon examination, plaintiff felt pain in his shoulder when he raised it more than 50 degrees and during backward extension, and crepitus over his rotator cuff was noted.  AR 641.  Plaintiff was also experiencing numbness and tingling in his right middle finger and the thumb of his right hand.  AR 638.  Plaintiff was instructed to use heat and ibuprofen, and he was referred to orthopedics.  AR 641.

Plaintiff was seen at an orthopedic clinic in April 2017.  AR 725.  The orthopedist assessed a partial tear in plaintiff's right rotator cuff, a tear in the superior labrum and right shoulder pain.  Id.  Orthopedic testing showed that plaintiff's shoulder was positive for impingement, and that plaintiff experienced pain during several other tests.  AR 729. The orthopedist recommended surgical repair, AR 731, but plaintiff chose to continue with conservative care, including physical therapy and pain medication, because he was concerned about the recovery period and lack of support during the postoperative period.  AR 845. Plaintiff received cortisone injections that provided him temporary relief.  AR 733.

In April 2018, plaintiff sought treatment again because his shoulder pain had increased.  AR 845.  He reported that he was not interested in pursuing surgery, so he was referred to physical therapy.  Id.  Plaintiff saw an orthopedist again in June 2018.  AR 977. The orthopedist recommended that plaintiff pursue aggressive conservative care, including

icing, physical therapy and anti-inflammatories, and to undergo surgery if the conservative treatment did not work.. Id.

## C.  Opinion Evidence

The medical record contained opinions from treating providers and consulting examiners about plaintiff's limitations.

Physician assistant Teresa Grimes gave the opinion that plaintiff had moderate restrictions in performing the activities of daily living; moderate restrictions in maintaining social functioning; marked limitations in his ability to deal with work stress; extreme deficiencies of concentration, persistence or pace; would be absent from work more than four days each month; and would have good days and bad days.  AR 618, 620.  Grimes stated that because of plaintiff's bipolar disorder, he could have psychomotor retardation, low cognitive functioning, poor hygiene and severe depression.  During manic periods, plaintiff could have insomnia, high anxiety, confusion, agitation, frustration and anger.  AR 617-20.  Grimes concluded that plaintiff had a "poor prognosis."  AR 617.

Licensed professional counselor Lynn Flannery, who treated plaintiff on a weekly basis for several years, gave the opinion that plaintiff has marked restrictions in performing the activities of daily living, marked difficulties in maintaining concentration, persistence or pace, and would be absent from work more than four days each month.  AR 439, 440.  Flannery noted that plaintiff has a history of acting aggressively with coworkers, supervisors and the general public, that he has been unable to maintain employment due to emotional

lability, stress, impulsive behavior and verbal aggression, and that his ability to focus when triggered is a significant hindrance to his being able to maintain employment. AR 437-38. Flannery stated that plaintiff has had a limited response to treatment and that his prognosis is "severe and persistent." AR 435.

Licensed professional counselor Jennifer Wendt treated plaintiff twice a month from September 2016 through May 2018. AR 663. Wendt gave the opinion that plaintiff had moderate and marked adaption deficiencies, moderate deficiencies understanding and remembering, marked deficiencies of concentration and persistence, and would be absent from work at least four days each month. AR 664-65. Wendt noted that plaintiff was very depressed, negative and hopeless during her sessions with him, and that he had a poor prognosis. AR 663.

State agency consultative examiner Patricia Bromley, PhD, examined plaintiff in October 2016. AR 579. Bromley diagnosed bipolar disorder with anxious distress, PTSD and panic disorder. Bromley stated that plaintiff had moderate limitations in understanding, remembering and carrying out simple instructions, responding appropriately to coworkers and supervisors, and adapting to changes, but that plaintiff was markedly impaired in his ability to maintain concentration, persistence or pace, and to withstand routine work stresses. AR 581. Bromley noted that during the examination, plaintiff appeared to be "very intense, anxious, and as though he is holding it together with some difficulty." AR 581.

Two state agency psychologists, Dr. Larry Kravitz PsyD and Dr. Susan Donahoo, Ph.D, gave opinions about plaintiff's mental health limitations. Kravitz gave the opinion

that plaintiff had mild functional limitations in daily activities and moderate limitations in social functioning, concentration, persistence and pace. AR 66-67. Donahoo concluded that plaintiff had no limitations in his ability to understand, remember, and apply information; mild limitations in his ability to concentrate, persist and maintain pace, adapt and manage himself; and moderate limitations in his ability to interact with others. AR 103.

### D.  Administrative Hearing

At an administrative hearing held in August 2018, plaintiff testified that he worked as a firefighter, paramedic and fire chief for several years until 2008, AR 43, the year that he was given a diagnosis of bipolar disorder. Since then, he had worked at several different jobs, including a nursing home, group homes, a warehouse, Walmart, a liquor store and an apple orchard. AR 37, 49, 51. At the time of the hearing, plaintiff was delivering newspapers on a part-time basis. AR 35-37. Plaintiff testified that he had trouble with working in the past because he would fail to show up for work and had problems getting angry and frustrated with his bosses. AR 42. On one occasion when he was working at a nursing home, he became angry and took a bat to work, with the intention of hitting whoever he could with it. AR 48. The police stopped him before he went inside. Id.

Plaintiff testified that he took medications for bipolar, depression, anxiety and high blood pressure. AR 39. He testified that his medications caused hand tremors, which made it impossible to use a keyboard or text. AR 39-40. He had not used in a computer in two years because of his hand tremors and the frustration it caused. AR 42. He also testified

that he had constant shoulder pain for which he took pain medication and a muscle relaxer and performed physical therapy.  AR 43.

When the administrative law judge asked plaintiff whether he participated in social activities, plaintiff answered that he did not have any friends or any family that he could count on. AR 41.  He stated that a friend would come over to his apartment to talk to him maybe once a month.  Id.  He testified that he helped his roommate cook, clean and perform household chores, AR 40, that he read and watched TV, and that he could go to grocery store with some difficulty. AR 41.

E.  Administrative Law Judge's Decision

The administrative law judge followed the five-step sequential evaluation of disability set out by the regulations.  20 C.F.R. § 416.920.  At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since applying for disability.  AR 15.  At steps two and three, the administrative law judge found that plaintiff had the severe impairments of right shoulder tendinitis, right shoulder rotator cuff [tear], degenerative disc disease, obesity, depression, anxiety, and post-traumatic stress disorder, but that none of those impairments met or equaled the severity criteria of a listed impairment.  AR 16-19.  At step four, the administrative law judge found that plaintiff had the residual functional capacity to perform light work, with the following limitations:

> simple, routine, repetitive, noncomplex work with only occasional changes in work routine, and includes no fast paced production work. He shall have no public contact and only occasional interaction with coworkers and supervisors.

He is limited to occasional climbing, stooping, kneeling, crawling, balancing, crouching, and frequent use of the right upper extremity.

AR 19-20.

In considering plaintiff's mental health, the administrative law judge gave "little weight" to the opinions of plaintiff's treating providers and the consultative examiner, and she gave "significant weight" to the opinions of the reviewing psychologists.

At steps four and five, the administrative law judge determined that plaintiff could not perform his past relevant work as a firefighter, fire chief, paramedic or certified nursing assistant, but that based on vocational expert testimony, plaintiff could perform a significant number of jobs in the national economy.  AR 22-23.


OPINION

Plaintiff contends that the administrative law judge erred by:  (1) failing to properly evaluate the mental health opinions in the record;(2) failing to account for plaintiff's off-task time, probable absenteeism, and limitations in concentration, persistence and pace in plaintiff's residual functional capacity; (3) failing to include adequate physical limitations for plaintiff's shoulder in plaintiff's residual functional capacity; and (4) failing to evaluate plaintiff's subjective complaints adequately.

In reviewing the administrative law judge's decision with respect to these arguments, I must determine whether the administrative law judge's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  The threshold for sufficiency is not high;

the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The administrative law judge must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).

A. Mental Health Opinion Evidence

Plaintiff contends that the administrative law judge erred in evaluating the opinion evidence of his treating providers—Teresa Grimes, Lynn Flannery and Jennifer Wendt—and the consultative examiner, Patricia Bromely. Plaintiff contends that the administrative law judge should have given more weight to the opinions from these mental health professionals in light of their history of treating or examining plaintiff and the consistency among their opinions. Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) (remand granted in part because the "the ALJ overlooked the extent to which the treating source's opinions were consistent with the diagnoses and opinions of other medical sources"). In this instance, all of these mental health professionals gave the opinion that plaintiff had marked or extreme limitations in maintaining concentration, persistence or pace. In addition, all of them except Bromely, who was silent on the issue, gave the opinion that plaintiff would be absent from work four or more days each month.

The administrative law judge gave "little weight" to these opinions, concluding that they were "extreme" and contradicted plaintiff's "admission to improved symptoms with the medication, the mental status examinations that reflect no more than moderate findings, and

11

the lack of emergency treatment or hospitalization." AR 18, 19.  The administrative law judge also noted that Bromley's opinion appeared to adopt plaintiff's subjective complaints, and was "inconsistent with the examination findings of a very good memory and adequate performance on concentration testing." AR 19.

I agree with plaintiff that the administrative law judge's analysis of the mental health opinions is inadequate.  The administrative law judge focused improperly on select portions of treatment notes from plaintiff's mental-health examinations and failed to provide an adequate analysis of the opinions provided about plaintiff's limitations.  In particular, the administrative law judge focused on the portions of treatment notes in which Flannery, Wednt and Grimes wrote that plaintiff presented normally, was feeling well and had a stable mood.  The administrative law judge did not discuss the numerous treatment notes in which plaintiff's medical providers found that plaintiff was struggling with anxiety, anger, low moods and decreased energy and motivation.  She did not acknowledge that throughout their treatment notes, both Grimes and Flannery noted that plaintiff had been unable to keep a job because of his mental health symptoms and emotional lability.  AR 476, 513, 553, 892, 900.  The administrative law judge did not discuss adequately the numerous notes in which Grimes and Flannery continued to assess plaintiff as having bipolar disorder and continued to recommend numerous medications and frequent therapy to manage his condition.

Plaintiff's medical record covers a period of several years and shows that his symptoms varied and his mental health fluctuated.  Plaintiff presented well at some of his

appointments, but his condition had deteriorated at others.  For example, plaintiff presented well at his appointments with Flannery in October and November 2015, but his mental health deteriorated significantly in December 2015, to the point that had angry outbursts at his part-time job, was placed on administrative leave, resigned, and struggled to engage in activities of daily living, such as showering and getting out of bed, between December 2015 and March 2016.  AR 503-09.  The administrative law judge failed to adequately acknowledge this fluctuation in plaintiff's mental health and ability to function.

Finally, the administrative law judge failed to acknowledge that the treatment observations included descriptions of how plaintiff presented at his appointment, and were not necessarily general assessments of his mental health or how he would present himself in the workplace.  Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) ("[T]he affect and mood notes that the ALJ emphasized simply described how Gerstner presented *on the days of her appointments*.  They were not general assessments.") (emphasis in original).  "After all, an individual's ability to comport herself normally during [thirty-minute long psychiatry] sessions or examinations does not necessarily lead to an inference that she has the functional capacity to work full-time." Kuehl v. Berryhill, 2018 WL 4405613, at *6 (W.D. Wis. Sept. 17, 2018) (citing Gerstner, 879 F.3d at 262).

The administrative law judge failed to "build a logical bridge" between the evidence and her rejection of the medical opinion testimonies.  An administrative law judge must grapple with lines of evidence that are contrary to her conclusion, and here the administrative law judge did not do so.  Hardy v. Berryhill, 908 F.3d 309, 312 (7th Cir.

2018); <u>Moore v. Colvin</u>, 743 F.3d 1118, 1123 (7th Cir. 2014). Therefore, the case must be remanded so that the commissioner can conduct a more thorough analysis of the medical records and consider the medical opinions properly.

### B.   Mental Residual Functional Capacity

Plaintiff next contends that the administrative law judge did not account adequately for plaintiff's mental limitations in the residual functional capacity assessment. The administrative law judge limited plaintiff to:

> simple, routine, repetitive, noncomplex work with only occasional changes in work routine, and includes no fast paced production work. He shall have no public contact and only occasional interaction with coworkers and supervisors.

Plaintiff argues that this residual functional capacity fails to account for his off-task time, probable absenteeism and limitations in concentration, persistence and pace. The commissioner responds that the residual functional capacity is supported by the opinions of state agency psychologists Dr. Larry Kravitz and Dr. Susan Donahoo. Kravitz gave the opinion that plaintiff had mild functional limitations in daily activities and moderate limitations in social functioning, concentration, persistence and pace. AR 66-67. Donahoo concluded that plaintiff had no limitations in his ability to understand, remember, and apply information; mild limitations in his ability to concentrate, persist and maintain pace, adapt and manage himself; and moderate limitations in his ability to interact with others. AR 103.

As discussed above, the administrative law judge failed to adequately analyze the plaintiff's mental health records and the mental health opinion evidence. On remand, the

commissioner should consider whether the mental health records and opinion evidence require that additional mental health limitations be accounted for in plaintiff's residual functional capacity.

In addition, I agree with plaintiff that the administrative law judge failed to address evidence showing that plaintiff might have excessive absenteeism and difficulty concentrating at work, including evidence showing his history of anger and frustration in the workplace, anxiety, distraction, lack of motivation and being terminated from numerous jobs because of absenteeism related to his mental health problems.   On remand, the commissioner should address how these limitations are accounted for in plaintiff's residual functional capacity.

## C.   Shoulder Limitations

In the residual functional capacity assessment, the administrative law judge concluded that plaintiff could frequently use his right upper extremity.  This means that plaintiff can use his right upper arm and shoulder from one-third to two-thirds of the time during an 8-hour workday.  Plaintiff contends that the administrative law judge failed to explain how she determined this limitation.  The commissioner responds that the residual functional capacity assessment was based on the opinions of two state agency physicians and the objective medical evidence.

However, the two state agency physicians gave opinions about plaintiff's physical limitations in October 2016 and March 2017, and did not have access to more recent

medical records about plaintiff's 2017 and 2018 right shoulder problems.  AR 60-75, 94-111. In 2017, an orthopedist assessed a partial tear in plaintiff's right rotator cuff, a tear in the superior labrum and right shoulder pain.  AR 729.  Orthopedic testing showed that plaintiff's shoulder was positive for impingement, and that plaintiff experienced pain during several other tests.  AR 729. The orthopedist recommended surgical repair, AR 731, but plaintiff declined because he would not have had post-operative support.  AR 845.  Plaintiff continued to experience shoulder pain and sought treatment again in April and June 2018.

The administrative law judge noted that plaintiff used physical therapy and received 75% relief from medication, but the record shows that the relief from cortisone injections was only temporary and that physical therapy had not eliminated plaintiff's shoulder problems.  AR 733.  The administrative law judge also failed to discuss plaintiff's testimony that he had constant shoulder pain, that he could not carry his newspaper bag on his right shoulder, that he could not use a keyboard or text because of hand tremors and that he took daily pain medication and a muscle relaxer for his shoulder.  AR 43.  In sum, the administrative law judge's conclusion that plaintiff could use his right upper extremity on a frequent basis is not supported by substantial evidence.  Therefore, the case must be remanded for further analysis of the medical evidence and plaintiff's testimony relating to his shoulder pain.

D.  Plaintiff's Subjective Symptoms

16

Finally, plaintiff contends that the administrative law judge improperly discredited his testimony about his symptoms and abilities that, if credited, would have led to a finding of disability.  In particular, plaintiff says that the administrative law judge should have credited his testimony and the function report stating that he had mood swings and difficulty controlling his frustration and anger in the workplace, that he had constant pain from his shoulder, that he had short-term memory problems from his medications and that his depression, anxiety and fatigue made it hard to do anything besides stay in bed or watch TV.  The administrative law judge discounted plaintiff's testimony for several reasons, including that the medical record did not support his complaints of physical limitations, that medical providers had recommended "conservative treatment" for plaintiff's shoulder and that plaintiff was able to engage in numerous daily activities.

I agree with plaintiff that the administrative law judge's analysis of plaintiff's subjective symptoms is inadequate.  First, as discussed above, the administrative law judge fails to explain why the medical records conflict with plaintiff's description of his shoulder pain and limitations or his testimony about hand tremors.  In addition, the administrative law judge failed to discuss adequately the reasons why plaintiff had pursued only conservative treatment for his shoulder, including the fact that plaintiff was frequently homeless and lacked adequate support to assist him after major a surgery.  Akin v. Berryhill, 887 F.3d 314, 318 (7th Cir. 2018) (administrative law judge must consider reasons for claimant's lack of certain treatment before drawing negative inferences about claimant's symptoms).

With respect to plaintiff's work history, the administrative law judge stated that although plaintiff testified that he could be easily angered and stressed out at work, evidence showed that he stayed at friend's houses, attended his children's sporting events and behaved appropriately during most mental-health examinations. AR 17. However, the administrative law judge failed to discuss contrary evidence in the record, including plaintiff's testimony about his inability to work, multiple treatment notes in which plaintiff discussed with his therapists the stress of working and attending his children's sporting events, and the fact that plaintiff stayed at a friend's house because he had no other place to live. The administrative law judge also noted that plaintiff could "handle finances," AR 17, even though the record shows that plaintiff frequently struggled with finances, struggled to pay child support and sought assistance from his therapist in financial matters on numerous occasions. AR 470-47, 473, 481, 496-502. Although the administrative law judge need not discuss every piece of evidence, he failed to discuss evidence that directly undermined his own conclusions, thereby failing to "build a logical bridge from evidence to conclusion." Villano v. Astrue, 556 F.3d 558, 56 (7th Cir. 2009).

Finally, the administrative law judge erred by failing to explain why plaintiff's ability to perform simply household chores, work part-time on a sporadic basis, watch TV and do occasional grocery shopping, with difficulty, suggests that plaintiff could be gainfully employed on a full time basis. The administrative law judge cites nothing in the record suggesting that plaintiff has, at any time in the past decade, been able to work on a particular task or remain engaged in a specific activity for a sustained period of time on a daily basis.

As the court of appeals has stated, "it's easier—especially for someone with an antisocial psychiatric disorder—to work in one's own home, at one's own pace, at one's own choice of tasks, than to work by the clock under supervision in a place of business." Price v. Colvin, 794 F.3d 836, 840 (7th Cir. 2015).  See also Forsythe v. Colvin, 813 F.3d 677, 679 (7th Cir. 2016) ("[E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40-hour-a-week job is perilous.").  The administrative law judge's failure to acknowledge and discuss this distinction is error.  Therefore, the case must be remanded so that the administrative law judge can conduct a more thorough evaluation of plaintiff's subjective symptoms and give valid reasons for her findings that are supported by substantial evidence in the record.


ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Neal P. Zinda is REVERSED and this case is REMANDED to defendant Andrew Saul, Commissioner of Social Security, for further proceedings consistent with this opinion.

Entered this 17th day of September, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

19